IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TAURUS BROWN | § | |
|     TDCJ-CID #877566 | § | |
| V. | § | C.A. NO. C-04-471 |
| | § | |
| CHRISTOPHER CARR, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper.  Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible.  See Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that certain claims

be dismissed, and that certain of plaintiff's claims be retained on the Court's docket.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. FACTUAL ALLEGATIONS

Plaintiff is currently incarcerated at the Darrington Unit in Rosharon, Texas, although his claims concern events that occurred at the McConnell Unit. He is suing the following twelve defendants: Officer Christopher Carr; Officer Alan Cantu; Officer Adan Garcia; Officer Jose Lopez; Officer Michael McGovran; Sergeant Martha Gallegos; Sergeant Jarod Bleibdrey; Sergeant Armando Sanchez; Captain Aurelio Ambriz; Assistant Warden Alfonso Castillo; Assistant Warden Eileen Kennedy; and Officer Bobby Gonzalez. In particular, plaintiff made the following allegations in his original complaint, (D.E. 1), his more definite statement, (D.E. 32), and at the September 8, 2005 Spears[1] hearing.

In general, plaintiff complains that between March and September 2004, he was mistreated by various officers on the second work shift. Plaintiff claims he was in fear for his life from Officer Cantu and Officer Garcia during this time, and

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

that he filed life in danger ("LID") complaints against them.  He also claims that other officers routinely denied him food, recreation time, and showers, and filed false disciplinary cases against him, ostensibly in retaliation for his filing grievances and civil lawsuits.  Finally, plaintiff claims that supervisory officials to whom he complained failed to protect him from excessive force and the retaliatory conduct of the officers they supervised.

On May 12, 2004, Officer Carr and Officer Lopez placed plaintiff in handcuffs to escort him to the recreation yard.  A "dog leash" was also attached to the handcuffs.  As plaintiff was standing up, Officer Carr snatched at the strap "with all of his might," bending plaintiff's arms and wrists in an awkward position. He told plaintiff "you move when I say move," and threatened to give him a disciplinary case.  Later, Sergeant Rawlins (not a defendant) observed plaintiff's arm and took him to the infirmary.  Plaintiff's arm was fractured and he had to wear a splint.

On July 11, 2004, Officer Cantu and Officer Garcia came to plaintiff's cell and told him it was "pay back time" and tried to get him out of his cell. Plaintiff feared that they were trying to assault him, so he refused to come out.  He testified that these two officers were not supposed to come near him because he had filed LID complaints against them.[2]  Sergeant Bleidrey and a lieutenant came to plaintiff's

_____

[2] Plaintiff filed LID claims against Officer Cantu and Officer Garcia on March 8, 2004, March 20, 2004, and June 3, 2004.  He claims he received no assistance from the wardens,

3

cell with a camera for a use of force video.  Plaintiff came out of his cell, and Officer Cantu yelled to stop resisting and slammed plaintiff's head.  Officer McGovran and Sergeant Gallgos were also present, but they did not intervene. Plaintiff was seen at his cell by a nurse.  The nurse told plaintiff that his shoulder was dislocated, and she told the officers that plaintiff's handcuffs should be taken off and that he should go to the infirmary, but the officers refused.  Plaintiff was seen later and prescribed Ibuprofen for muscular and skeletal pain.

On June 3, 2004 and October 10, 2004, Officer McGovran denied plaintiff his breakfast.  Plaintiff claims this was in retaliation for his complaining about false disciplinary cases McGovran had filed against him, and that were dismissed.

On June 7, 2004, Officer Gonzalez recruited other inmates to shoot plaintiff with a homemade "spear" gun.  On June 18, 2004, Officer Gonzalez denied plaintiff food.  On July 2, 2004, Officer Gonzalez fabricated a story against plaintiff and planted a weapon in plaintiff's cell.  On August 30, 2004, Officer Gonzalez struck plaintiff with a metal tray slot bar.

Plaintiff filed numerous step 1 and step 2 grievances complaining of these events; his grievances were denied.  He is suing defendants in their individual capacities, and is seeking monetary damages.

---

captains, or majors, so he filed a complaint with the Inspector General on June 3, 2004, and an investigation was conducted.  He does not know the outcome of the investigation.

### III.  <u>DISCUSSION</u>

**A.      Legal Standard.**

The Supreme Court has established that "[t]o state a claim under 42 U.S.C. §
1983, a plaintiff must allege the violation of a right secured by the Constitution and
laws of the United States, and must show that the alleged deprivation was
committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S.
42, 48 (1988); <u>see</u> <u>also</u> <u>Biliski v. Harborth</u>, 55 F.3d 160, 162 (5th Cir. 1995)
(per curiam).  An action may be dismissed for failure to state a claim when it is
clear that the prisoner can prove no set of facts in support of his claim entitling him
to relief.  <u>Oliver v. Scott</u>, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The
complaint must be liberally construed in favor of the prisoner, and the truth of all
pleaded facts must be assumed.  <u>Id.</u> (citation omitted).

**B.      Plaintiff's Eighth Amendment Claims.**

The Eighth Amendment prohibits cruel and unusual punishment.  Prison
officials must provide humane conditions of confinement; ensure that inmates
receive adequate food, clothing, shelter, and medical care; and take reasonable
measures to guarantee the safety of the inmates.  <u>Farmer v. Brennan</u>, 511 U.S. 825,
832 (1994).  Conditions that result in "unquestioned and serious deprivations of
basic human needs," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), or deprive
inmates of "the minimal civilized measure of life's necessities" violate the Eighth

Amendment.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  Such a violation occurs

when a prison official is deliberately indifferent to an inmate's health or safety.

Farmer, 511 U.S. at 834 (citations omitted).   Deliberate indifference is more than

mere negligence.  Id. at 835.  To act with deliberate indifference, a prison official

must both know of and disregard an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists and he must also draw the inference.  Id. at

837.

### 1.    *Excessive use of force.*

It has long been established that "[n]ot every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Indeed, as the Fifth Circuit has explained, "[t]o prevail on an eighth amendment

excessive force claim, a plaintiff must establish that force was not 'applied in a

good-faith effort to maintain or restore discipline, [but] maliciously and sadistically

to cause harm,' and that he suffered an injury."  Eason v. Holt, 73 F.3d 600, 601-02

(5th Cir. 1996) (quoting Hudson, 503 U.S. at 7).  The factors to consider in

evaluating an excessive force claim include: "1. the extent of the injury suffered; 2.

the need for the application of force; 3. the relationship between the need and the

amount of force used; 4. the threat reasonably perceived by the responsible

officials; and 5. any efforts made to temper the severity of a forceful response."
Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).

The Fifth Circuit has emphasized that "*some* physical injury is an indispensable element of an Eighth Amendment excessive force claim."  Id. (emphasis in original).  To support an excessive force claim, "a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor."  Id. at 924; see also Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

Plaintiff claims that Officer Carr used excessive force on May 12, 2004, when he pulled him up from the floor with the leash attached to the hand restraints, fracturing plaintiff's arm.  He further asserts that Officer Cantu and Officer Garcia used excessive force on July 11, 2004, when they used force to remove him from his cell, dislocating his shoulder.  Finally, he claims that on August 30, 2004, Officer Gonzalez struck him with a metal tray slot bar.  Plaintiff testified that, in each of these instances, he was not resisting the officers when the force was applied such that it was done maliciously and with intent to injure.   In addition, the complained of injuries are more than *de minimis.*  Assuming plaintiff's allegations to be true, he has stated a claim for excessive use of force, and it is respectfully recommended that plaintiff's excessive force claims against Officer Carr, Officer

Cantu, Officer Garcia, and Officer Gonzalez be retained.

### 2. *Failure to protect.*

The deliberate indifference standard applies to cases involving allegations of failure to protect an inmate from violence at the hands of another inmate or an unruly correctional officer. The Supreme Court has determined that "[d]eliberate indifference describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." <u>Farmer</u>, 511 U.S. at 835 (citations omitted). "[P]rison officials have a duty to protect prisoners from violence at the hand of other prisoners." <u>Cantu v. Jones</u>, 293 F.3d 839, 844 (5th Cir. 2002) (citing <u>Farmer</u>, 511 U.S. at 833). Despite this duty to protect, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847.

### a. *Officer Lopez.*

Plaintiff testified that, on May 12, 2004, Officer Lopez observed Officer Carr use excessive force against plaintiff when he pulled him up by the handcuffs, but Officer Lopez did nothing to help him. However, plaintiff offers no facts to suggest that Officer Lopez *knew or should have known* that plaintiff was at risk of serious harm from Officer Carr. Moreover, as plaintiff explained the incident, the force

occurred quickly, and there is no evidence that Officer Lopez, even had he wanted to, could have stopped Officer Carr in time to prevent injury to plaintiff's arm.  It is respectfully recommended that plaintiff's failure to protect claim against Officer Lopez be dismissed.

### b.      Sergeants Gallegos and Bleidrey and Officer McGovran.

Plaintiff alleges that, at the time Officer Cantu and Officer Garcia allegedly used excessive force against him on July 5, 2004, Sergeant Gallegos, Sergeant Bleidrey, and Officer McGovran were working the same shift, but that they did not intervene or otherwise help plaintiff.

To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.  Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995) (per curiam).  A plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*.  Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978)).  The Fifth Circuit has noted that  "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries."  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir.

1992).  A policy can be either one that is officially adopted or a "persistent, widespread practice" that is so common, it constitutes a policy.  <u>Burge v. St. Tammany Parish</u>, 336 F.3d 363, 369 (5th Cir. 2003) (quoting <u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)).

To the extent plaintiff is claiming that Sergeant Gallegos and Sergeant Bleidrey are liable as supervisors, he fails to state a claim upon which relief can be granted.  Moreover, he fails to establish that these defendants knew or should have known that Officer Cantu and Officer Garcia were a serious threat to plaintiff's health and safety.  It is respectfully recommended that plaintiff's claims against these three defendants be dismissed for failure to state a claim.

### c.    *Warden Kennedy, Warden Castillo, and Captain Ambriz.*

Plaintiff testified that he filed numerous LID claims against Office Cantu and Officer Garcia prior to the July 11 incident.  Specifically, he claims that he notified the wardens, captains, and majors of his fears on March 8, 2004, March 20, 2004, and June 3, 2004, but that he got no assistance from these defendants.  He then filed a complaint with the Inspector General, and an investigation was made into his claims.  Plaintiff did not know the outcome of the investigation.

In the context of deliberate indifference, "a prisoner normally must complain about a specific threat to a supervisory official in order to give actual notice to that official."  <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 912 (5th Cir. 1998) (citation omitted).

Here, plaintiff's allegations suggest that Warden Kennedy, Warden Castillo, and Captain Ambriz had knowledge that plaintiff was at risk of violence from certain correctional officers.  It is respectfully recommended that his failure to protect claims against these individuals be retained.

### 3.   Retaliation.

Plaintiff claims that Officer Carr, Officer Cantu, Officer Garcia, Sergeant Bleidrey, Officer Gonzalez, and Officer McGovran denied him food, showers, and recreation time, and filed false disciplinary cases against him in retaliation for his filing grievances and lawsuits.

The Fifth Circuit has noted that "[t]o prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  The inmate must be able to point to a specific constitutional right that has been violated.  Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam). The inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are insufficient.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may

plausibly be inferred.'" Id. (citation omitted).  Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald, 132 F.3d at 231.

Prisoners have a first amendment right of access to the courts and to file grievances.  Lewis v. Casey, 518 U.S. 343, 360 (1996).  Plaintiff testified that he routinely filed grievances against Officer Carr, Officer Cantu, Officer Garcia, Sergeant Bleidrey, Officer Gonzalez, and Officer McGovran, and in turn, these defendants denied him privileges and filed false disciplinary cases against him. Plaintiff has established a chronology of events from which retaliation can be inferred, and it is respectfully recommended that his retaliation claims against these defendants be retained.

## IV.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that:

1.   Plaintiff's excessive force and retaliation claims against Officer Carr, Officer Cantu, Officer Garcia, and Officer Gonzalez be retained on the Court's docket;

2.   Plaintiff's retaliation claims against Officer McGovran and Sergeant Bleidrey be retained; and

3.    Plaintiff's failure to protect claims against Warden Kennedy, Warden Castillo, and Captain Ambriz be retained.

It is respectfully recommended that plaintiff's remaining claims be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. § 1997e(c), and that defendants Sergeant Lopez, Sergeant Gallegos, and Sergeant Sanchez be dismissed from this lawsuit.

Respectfully submitted this 14th day of October 2005.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1)(C), and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs Auto. Ass'n</u>, 79 F.3d 1415 (5th   Cir.1996) (en banc).